IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

CHARLES W. STEWART,                )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )        Case No. 3:16-cv-356-MHT-WC
                                   )
ARGOS READY MIX, LLC, *et al.*,    )
                                   )
        Defendants.                )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

On May 18, 2016, Plaintiff filed a complaint alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), and Alabama common law.  Doc. 1 at 1.  On July 7, 2016, Defendants filed a Motion to Dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(e).  Doc. 16 at 1.  Defendants also filed a Motion to Strike portions of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Doc. 15 at 1.  Plaintiff filed responses to both motions on July 22, 2019.  Docs. 19, 20.[1]  Defendants replied on August 12, 2016.  Docs. 23, 24.  On July 29, 2016, the District Judge entered an Order (Doc. 22) referring the case to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial

---

[1] In Plaintiff's response to Defendant's Motion to Dismiss, Plaintiff argues that Defendant's motion was "due to be denied because Plaintiff's Complaint (Doc. #1) meets the pleading standards required by the Rules."  Doc. 20 at 1.  However, Plaintiff also requests "leave through [that] filing to amend his Complaint to correct any deficiencies found by this Court" if the court found Plaintiff's complaint deficient.  *Id*.  On September 30, 2016, the undersigned construed Plaintiff's request as a motion to amend his complaint, and granted the motion.  Doc. 36.  The undersigned ordered Plaintiff to file an amended complaint, if he so desired to amend, no later than October 7, 2016.  *Id*. at 3.  Plaintiff did not file an amended complaint.

matters as may be appropriate."  As the matters before the court are fully briefed, they are ripe for recommendation to the District Judge.  For the reasons that follow, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' Motion to Strike (Doc. 15) be DENIED, and that Defendants' Motion to Dismiss (Doc. 16) be GRANTED in part and DENIED in part.

## DISCUSSION

### I.    *Defendants' Motion to Strike*

Defendants move the court, "pursuant to Fed. R. Civ. P. 12(f), to strike from [P]laintiff's complaint all allegations related to [D]efendants having offered [P]laintiff . . . a separation agreement."  Doc. 15 at 1.  Defendants argue that those allegations "violate Rule 408 of the Federal Rules of Evidence."  *Id*. at 2, ¶ 4.  Defendants acknowledge that, while "Rule 408 is a rule of evidence and not of procedure, courts have regularly used Rule 12(f) to strike allegations from complaints that detail discussions within the ambit of Rule 408."  *Id*. at 3, ¶ 4.  Finally, Defendants argue that "any reference to the separation agreement and release between the parties is irrelevant to [P]laintiff's ADA claims, FMLA claim, fraudulent misrepresentation claim, and fraudulent deceit claim."  *Id.* at 5, ¶ 7.

Plaintiff responds that (1) a motion to strike is a drastic remedy disfavored by the court, Doc. 19 at 2, ¶ 5; (2) Defendants failed to show that they have been prejudiced by the paragraphs in question, *id*. at 3, ¶ 7; (3) such a request is more properly considered in a motion *in limine* instead of a Rule 12(f) motion, *id*. at 3-4, ¶ 8; (4) the paragraphs are not offered to prove or disprove the validity or amount of a disputed claim, *id*. at 4, ¶ 9; (5) the

2

"so-called 'offer' was not an offer attempting to resolve an undisputed claim[,]" *id*. at 4, ¶ 10; (6) the paragraphs are relevant to Defendants' attempt to violate Plaintiff's rights under the ADA and FMLA, *id*. at 4, ¶ 11; and (7) the paragraphs are admissible for other permissible purposes, *id*.

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter.[2] Fed. R. Civ. P. 12(f).  A court has broad discretion when considering a Rule 12(f) motion, though the striking of a pleading is an extreme measure and such motions are "viewed with disfavor and infrequently granted." *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000).  Motions to strike "'will usually be denied unless the allegations have *no possible relation* to the controversy and may cause prejudice to one of the parties.'" *Loucks v. Shorest*, LLC, 282 F.R.D. 637, 638 (M.D. Ala. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 863, 868 (5th Cir. 1962)) (emphasis added).

---

[2] An "immaterial matter" is one that has no important relationship to a claim or defense and an "impertinent matter" is one that does not pertain to the issues in question.  *S.D. v. St. Johns Cty. Sch. Dist.*, No. 3:09-cv-250-J-20TEM, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009) (citing *126th Ave. Landfill, Inc., v. Pinellas Cty.,* No. 8:09-CV-307-T-33TBM, 2009 WL 1544030, at *2-3 (M.D. Fla. June 3, 2009)).  A "redundant matter" consists of allegations that constitute a needless repetition of other averments in the pleadings.  *Stewart v. Thomas*, 538 F. Supp. 891, 894 (D.D.C. 1982) (The cause of action for "outrage" stricken as redundant, since the plaintiff also asserted a separate claim for intentional infliction of emotional distress, and the tort of "outrage" is but another name for intentional infliction of emotional distress.).  A "scandalous matter" is that which improperly casts a derogatory light on someone, most typically on a party to the action.  *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009) ("Scandalous matters are allegations 'that unnecessarily reflect[ ] on the moral character of an individual or state[ ] anything in repulsive language that detracts from the dignity of the court.'", (quoting *Cobell v. Norton*, 224 F.R.D. 1, 5 (D.D.C. 2004)).

The Federal Rules of Evidence provide that statements concerning compromise or attempts to compromise with regard to disputed claims are not admissible by any party to prove liability, validity, or the amount of a claim.  Fed. R. Evid. 408(a).  Rule 408 applies only to exclude evidence concerning *disputed* claims; "a dispute arises only when a claim is rejected at the initial or some subsequent level."  *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.,* 50 F.3d 476, 480 (7th Cir. 1995).  Evidence of compromise or attempts to compromise is not excluded under Rule 408 if not offered to show liability, validity, or amount, but rather to show, for example, bias, lack of undue delay, or obstruction of a criminal prosecution.  Fed. R. Evid. 408(b).  "[S]ome district courts have observed that 'Rule 408 disputes are more appropriately resolved in the context of a motion *in limine* instead of prematurely through a Rule 12(f) motion.'"  *Sibille v. Davis*, No. 3:13-CV-566-WKW, 2013 WL 6038720, at *3 (M.D. Ala. Nov. 14, 2013) (quoting *Sawo v. Drury Hotels Co.*, No. 11cv2232, 2011 WL 3611400, at *2 (D. Kan. Aug. 15, 2011)).

The material Defendants seek to strike involves a separation agreement that was purportedly forwarded to Plaintiff unsolicited.  Doc. 1 at 8, ¶ 47.  Plaintiff's complaint identifies portions of the content of that unsolicited agreement, including that the agreement "contained verbiage releasing [Defendant] Argos for any claims under, *inter alia*, the ADA or the FMLA."  *Id*.  In the subsequent paragraphs, Plaintiff lays out the monetary amounts offered by Defendant Argos in both unsolicited agreements.  *Id*. at 8-9, ¶¶ 48-50.  Plaintiff did not sign either agreement.  *Id*. at 8, 9, ¶¶ 49, 50.

4

For several reasons, the undersigned concludes that Defendants' motion to strike should be denied.  First, it does not appear that the material Defendants seek to strike is reflective of negotiations between the parties.  *See S.A. Healy Co*., 50 F.3d at 480 (requiring an actual dispute between parties for application of Rule 408 to exclude evidence).  Indeed, assuming the veracity of Plaintiff's factual allegations, the agreements at issue were *unsolicited*—meaning that Plaintiff had not attempted to settle a disputed claim with Defendant at that point.  Second, Plaintiff has provided an "arguably permissible use" for the paragraphs outside of the uses prohibited by Rule 408(a).  *See Sawo*, 2011 WL 3611400, at *2 (noting that Rule 408 does not mandate exclusion of evidence of a compromise or offer to compromise for all purposes, but only "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction.").  Indeed, Plaintiff argues: the purpose of the paragraphs is to show "that the separation agreement, which was provided to [Plaintiff] the day he returned to work (but backdated), was pretextual, and that [Defendant] Argos had intended to constructively terminate him upon his return." Doc. 19 at 4, ¶ 9.  As such, the undersigned does not find the paragraphs redundant, immaterial, impertinent, or scandalous to this case.[3]  Further, the undersigned agrees with Plaintiff that Defendants' request is more properly asserted with the trial court—in this instance—in a motion *in limine*.  While Defendants' motion to strike is due to be denied, the ultimate

---

[3] If there is a doubt as to the utility of the paragraphs in question, the doubt is resolved against the Rule 12(f) movant.  *Sawo*, 2011 WL 3611400, at *2.

admissibility of evidence supporting the allegations in the disputed paragraphs is for the court to decide at a later stage.[4]

Defendants have not carried their burden in showing that the contested paragraphs lack any possible relation to the matters raised in this case or that Defendants will be prejudiced if the court does not strike the paragraphs from the complaint.   Thus, Defendant's motion to strike is due to be denied.

## II.     *Defendants' Motion to Dismiss*

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief.  *Vernon v. Med. Mgmt. Assocs. of Margate, Inc*., 912 F. Supp. 1549, 1553 (S.D. Fla. 1996).  It is read alongside Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.  *See* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v.*

---

[4] Defendant relies on Fed. R. Evid. 408 to obtain an advance ruling as to the admissibility of evidence relevant to paragraphs 47-50.  The issue on a Rule 12(f) motion, however, is not admissibility of evidence at trial, but rather immateriality, impertinence, and scandalousness of allegations in the complaint.  *Sawo*, 2011 WL 3611400, at *2.  Rule 408 disputes are more appropriately resolved in the context of a motion *in limine* instead of prematurely through a Rule 12(f) motion.  *Id.*

*Twombly,* 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons, Inc.,* 555 F.3d 949, 958 (11th Cir. 2009); *Corbitt v. Home Depot U.S.A., Inc.,* 573 F.3d 1223, 1256 (11th Cir. 2009); *Cobb v. State of Fla.,* 293 F. App'x 708, 709 (11th Cir. 2008); *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007).  "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly,* 550 U.S. at 557.  Indeed, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'"  *Wilchombe,* 555 F.3d at 958 (quoting *Twombly,* 550 U.S. at 562).  On a motion to dismiss, the Court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff.  *See Hughes v. Lott,* 350 F.3d 1157, 1159–60 (11th Cir. 2003) (internal citation omitted); *see also Cobb,* 293 F. App'x at 709; *Brown v. Budget Rent–A–Car Syst., Inc.,* 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6).  *Iqbal,* 556 U.S. at 679.  A court should first ask whether the pleading properly asserts "well-pleaded factual allegations" or whether, instead, it merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id.* at 679– 680  (quoting *Twombly,* 550 U.S. at 555).  If the complaint contains factual allegations that are well pled, the court should assume their veracity and then move to the next step, asking whether the factual allegations "plausibly give rise to an entitlement to relief."  *Id.* at 679.  Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would

push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* at 680 (quoting *Twombly,* 550 U.S. at 570) (quotation marks omitted).

Defendants' Motion to Dismiss (Doc. 16) moves the court to dismiss with prejudice all counts of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 12(e).  Doc. 16 at 1.  Defendants present the following seven arguments for the court's consideration:

(1) Plaintiff's complaint should be dismissed for failure to state a claim as an inappropriate "shotgun" pleading, *id.* at 8-10;

(2) Plaintiff's ADA claim against Defendant Pedersen should be dismissed because the ADA does not allow claims against individuals, *id.* at 10-11;

(3) Plaintiff's FMLA claim against Defendant Pedersen should be dismissed for lack of subject matter jurisdiction, *id.* at 11-14;

(4) Plaintiff's ADA discrimination claim should be dismissed because the complaint fails to allege Plaintiff suffered an adverse term and condition of employment, *id.* at 14-18;

(5) Plaintiff's ADA failure-to-accommodate claim should be dismissed for multiple reasons, including that Plaintiff has merely alleged that "he was not provided the benefit of his choice" when he was transferred to a different plant, *id.* at 19; that Plaintiff's transfer to a different plant was a reasonable accommodation because it allowed Plaintiff "to continue to work with no apparent change in the terms and conditions" of his employment,

*id*. at 19-20; and that Plaintiff's transfer to a different plant does not meet the standard for an adverse employment action, *id*. at 21-22;

(6) Plaintiff's Fraudulent Misrepresentation Claim against Defendant Pedersen should be dismissed for multiple reasons, including that Plaintiff cannot demand damages arising from alleged misrepresentations made by Defendant Pedersen to a third-party, who is non-party to this suit, *id*. at 23-24; that Plaintiff's complaint fails to "point out which particular statements contained in the body of the complaint satisfy" the elements of the fraudulent misrepresentation claim, *id*. at 24-25; that Plaintiff fails to allege with specificity that Defendant Pedersen's alleged misrepresentations to a third-party were made with the intent to induce Plaintiff to act and that Plaintiff acted to his detriment in reliance on such statements, *id*. at 25-27; that Plaintiff fails to satisfy the requirement that Defendant Pedersen made misrepresentations to him with the intent to induce him to act and that he acted to his detriment in reliance on such statements, *id*. at 27-29; and that Plaintiff fails to allege how reliance on each alleged misrepresentation caused him damage, *id*. at 29; and

(7) Plaintiff's Fraudulent Deceit Claim against Defendant Pedersen should be dismissed for failure to state a claim with particularity as required by Rule 9(b), *id*. at 30-32.

The undersigned will address each in turn.

### 1. Whether Plaintiff's pleading is an impermissible shotgun pleading.

Defendants assert that Plaintiff's complaint is an impermissible shotgun pleading that fails to comport with Rule 8 of the Federal Rules of Civil Procedure and the pleading

requirements of this court and of the Eleventh Circuit.  Doc. 16 at 1, n. 1.  Thus, Defendants ask the court to dismiss Plaintiff's complaint in its entirety, or require Plaintiff to amend the complaint to provide Defendants with more clarity regarding which of Plaintiff's factual assertions support each of Plaintiff's claims.  *Id*. at 8-10.

Upon review of Plaintiff's complaint, the undersigned does not agree with Defendants that Plaintiff's complaint is a shotgun pleading.[5]  As pointed out by Defendants, "shotgun pleadings . . . make it *virtually impossible* to know which allegations of fact are intended to support which claim for relief."  *Popham*, 392 F. App'x at 680 (emphasis added).  Such is not the case in this instance.  Plaintiff's complaint is fifteen pages, asserts five claims, and contains forty paragraphs of "factual allegations."  *See* Doc. 1.  Plaintiff's complaint is navigable, and not so onerous that Defendants cannot associate Plaintiff's factual allegations with the appropriate claim.  As such, the undersigned concludes that Plaintiff's complaint should not be dismissed as an impermissible shotgun pleading, nor should Plaintiff be required to amend on that basis.

---

[5]  The cases cited by Defendants involve much lengthier and more complex complaints than the one at issue here.  In *Popham v. Cobb Cty., Ga. Gov't*, 392 F. App'x 677, 680 (11th Cir. 2010), the Eleventh Circuit determined that the trial court did not abuse its discretion when it dismissed the plaintiff's one hundred, forty-five page complaint after giving the plaintiff a chance to amend.  In *Thompson v. RelationServe Media*, 610 F.3d 628, 650 n. 22 (11th Cir. 2011), the Eleventh Circuit affirmed the district court's dismissal of the plaintiff's complaint, concluding that scienter was not properly pled, after the plaintiff was given two opportunities to amend by the district court.  In *Horn v. Russell Cty. Bd. of Educ.*, No. 3:09-cv-624-MHT, 2010 WL 4340786 (M.D. Ala. Oct. 8, 2010), this court determined that the plaintiff's complaint—and amended complaint, which contained twenty-three claims within thirty-five pages—were shotgun pleadings.

### 2. *Whether Plaintiff's ADA claim against an individual Defendant should be dismissed.*

Defendants argue that Plaintiff's ADA claim against Defendant Pedersen should be dismissed because the ADA does not allow claims against individuals.  Doc. 16 at 10-11.  Plaintiff argues that Defendants' motion "to dismiss the ADA claims against [Defendant] Pedersen should be denied because Defendants are seeking to dismiss claims that are not contained in this action."  Doc. 20 at 5, n. 1.

Count one of Plaintiff's complaint is a claim for unlawful discrimination in violation of the ADA.  Doc. 1 at 10.  Within that count, Plaintiff alleges that "*Defendants'* actions constitute discrimination in violation of the [ADA]" and "seeks entry of a judgment against *Defendants*, jointly and severally. . . ."  *Id*. (emphasis added).   Despite Plaintiff's protestation otherwise, [6] it appears to the undersigned that Defendant Pedersen is currently included as a defendant in Plaintiff's ADA claim.  Defendants are correct that individuals are not accessible in a private suit for violating the anti-discrimination provision of the ADA.  *Albra v. Advan, Inc*., 490 F.3d 826, 830 (11th Cir. 2007) (holding that "[b]ecause individual liability is precluded for violations of the ADA's employment discrimination provision, . . . the district court properly dismissed Albra's discrimination claim against the

---

[6] Plaintiff states: "Plaintiff is not making a claim against [Defendant] Pedersen for violation of the ADA in Count I or Count II. . . . Plaintiff did not identify Defendant Pedersen as an employer for purposes of the ADA. . . . Plaintiff does identify [Defendant] Pedersen as an actor on behalf of [Defendant] Argos, but is not pursuing a claim against [Defendant] Pedersen under the ADA."  Doc. 20 at 5, n. 1.

Abbotts."). As such, the undersigned concludes that Defendants' motion to dismiss Defendant Pedersen from count one is due to be granted.

### 3. *Whether Plaintiff's FMLA claim against an individual Defendant should be dismissed.*

Defendants argue that Plaintiff's FMLA claim against Defendant Pedersen should be dismissed for lack of subject matter jurisdiction because Plaintiff has not alleged facts sufficient to show that Defendant Pedersen is an employer under the FMLA. Doc. 16 at 11-14.

"Where a defendant in an FMLA suit does not meet the statutory definition of 'employer,' there is no federal subject matter jurisdiction over the claim against that defendant." *Wascura v. Carver*, 169 F.3d 683, 685 (11th Cir. 1999) (citing *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 608 (6th Cir. 1998)). Although the Eleventh Circuit has not directly examined the issue of individual liability in the context of a private employer, the Circuit Court has determined that a public official sued in his individual capacity is not an employer under the FMLA. *Wascura*, 169 F.3d at 687. In reaching that conclusion, the Circuit Court relied on a Fair Labor Standards Act ("FLSA") decision interpreting the definition of employer. *Id*. at 686. The Circuit Court did so because "Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical to that in the FLSA[; therefore,] . . . decisions interpreting the FLSA offer the best guidance for construing the term 'employer' as it is used in the FMLA." *Id*. at 686. Thus, in the absence of FMLA decisions on point, FLSA decisions provide the appropriate

12

guidance for the court. *Id*; *see also Miller v. Centennial Bank*, 2015 U.S. Dist. LEXIS 124190 (S.D. Ala. Sept. 17, 2015) (noting that, on the defendant's motion to dismiss, FLSA precedent was applicable to determining whether the defendant was substantially involved in day-to-day operations and had substantial control over the plaintiff so that the defendant could be considered an employer under FMLA).

In order to qualify as an employer under the FLSA and to be liable for FLSA violations, the defendant must "either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986); *see also Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1313 (11th Cir. 2013). The Second Circuit applied an "economic realities" test in order to determine if an individual defendant qualifies as an employer for FLSA purposes. *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 139-41 (2d Cir. 1999). That test examines whether the defendant: (1) had the power to hire and fire employees; (2) supervised and controlled employees' work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id*. at 139. The "economic realities" test encompasses the totality of the circumstances, and no single factor is dispositive. *Santos v. Cuba Tropical, Inc*., 829 F. Supp. 2d 1304, 1315 (S.D. Fla. 2011). The Eleventh Circuit has applied the economic realities test in an FLSA context. *Villareal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997) (holding that a pretrial detainee was not an employee under the FLSA by examining the relationship between the pretrial detainee and the correctional facility under the economic realities test).

With that legal framework in mind, the undersigned turns to Plaintiff's complaint to evaluate Plaintiff's allegations regarding the extent of Defendant Pedersen's involvement in the day-to-day operations and supervision of Plaintiff.  On the one hand, Plaintiff's factual assertions indicate that Defendant Pedersen does not possess the type of involvement envisioned to trigger individual liability under the FLSA or the FMLA.  First, Plaintiff's complaint alleges that Plaintiff met with Defendant Pedersen purportedly to engage in alternative dispute resolution.  Doc. 1 at 5, ¶ 25.  Prior to that meeting, Plaintiff's complaint alleges no involvement on behalf of Defendant Pedersen, despite an approximate three-month time period in which company officials and Plaintiff met and discussed Plaintiff's return to work.  This suggests to the undersigned that Defendant Pedersen functioned within the traditional role of corporate counsel and was not directly responsible for the supervision of Plaintiff or involved in day-to-day operations of Defendant Argos.  Second, with regards to supervision, the undersigned notes that Plaintiff's complaint points to *other* individuals as supervisors who maintained control of the day-to-day operations of the plant.  In paragraph twenty, Plaintiff identifies Brad Baker ("Baker"), Plaintiff's immediate supervisor, and Michael Beer ("Beer"), Director of Human Resources, as the individuals who determined whether Plaintiff would be allowed to return to work after his stroke.  Doc. 1 at 4.  In paragraph twenty-one, Plaintiff points to Baker as the individual who told Plaintiff his accommodations could be met.  *Id*.  Additionally, when Plaintiff left work at the Columbus plant due to an anxiety attack, Plaintiff asked his contemporary to relay information about his absence to Justin Busby ("Busby"), who was identified by

14

Plaintiff as his supervisor. *Id*. at 7, ¶ 42. Upon leaving his doctor's office, Plaintiff phoned Busby "to inquire as to what time he should report to work the following day." *Id*. at 7, ¶ 44. These allegations indicate that Defendant Pedersen did not have direct supervisory responsibility of Plaintiff. Further, Plaintiff's complaint points to Mark Prybylski ("Prybylski"), Senior General Counsel for Defendant Argos and Defendant Pedersen's supervisor, as the individual who communicated to Plaintiff that he could no longer work for Defendant Argos and that Plaintiff would be provided a "great settlement offer." *Id*. at 8, ¶¶ 45, 49. Thus, from Plaintiff's own complaint, it appears that Baker and Busby—not Defendant Pedersen—supervised Plaintiff on a day-to-day basis; that Prybylski—not Defendant Pedersen—told Plaintiff that he could not work for Defendant Argos; and that Prybylski—not Defendant Pedersen—offered Plaintiff a settlement agreement. Considering the economic realities test, Plaintiff's complaint fails to allege facts to suggest that Defendant Pedersen had the general power to hire and fire employees; that she supervised and controlled employees' work; that she determined the rate and method of employee payment; or that she maintained employment records.

On the other hand, Plaintiff alleges facts suggesting that Defendant Pedersen exerted *some* control over the operations of the company. Specifically, Plaintiff alleges that Defendant Pedersen advised Plaintiff that Defendant Argos, on two occasions, could not meet the accommodations requested by Plaintiff. *Id*. at 5, ¶¶ 26, 31. Plaintiff also alleges that Defendant Pedersen informed Plaintiff that "his only option was to transfer" to the Columbus plant, and that if he refused, he would be terminated. *Id*. at 7, ¶ 39. Finally,

Plaintiff alleges that Defendant Pedersen forwarded Plaintiff two unsolicited separation agreements.  *Id*. at 8, 9, ¶¶ 47, 50.   While those facts suggest that Defendant Pedersen was involved—to a certain degree—in the events giving rise to Plaintiff's complaint, the undersigned concludes that such involvement is not indicative of Defendant Pedersen's control of the "day-to-day operations" of Defendant Argos, nor is it indicative that Defendant Pedersen had "direct responsibility for the supervision" of Plaintiff.  *See Lamonica*, 711 F.3d at 1313.  As such, Defendants' motion to dismiss Defendant Pedersen from Plaintiff's FMLA claim is due to be granted.

### 4.   *Whether Plaintiff's ADA discrimination claim fails because Plaintiff did not allege an adverse term and condition of employment.*

Defendants argue that Plaintiff's ADA discrimination claim should be dismissed because the complaint fails to allege that Plaintiff suffered an adverse term and condition of employment as required for an ADA discrimination claim.   Doc. 16 at 14-18. Defendants assert that, because Plaintiff has merely shown that he was transferred to another plant forty miles away from his previous position, Plaintiff has not suffered a serious and material change in the terms, conditions, or privileges of his employment.  *Id*. at 14, 15 (citing *Davis v. Town of Lake Park, Fla*., 245 F.3d 1232, 1239 (11th Cir. 2001) (requiring an employee to demonstrate that he suffered "a serious and material change in the terms, conditions, or privileges of employment" to show an adverse employment action in the Title VII employment discrimination context)).  Defendants support their argument by citing multiple cases standing for the proposition that "a reassignment or transfer which

results in an increased commute . . . without more, is not objectively serious and tangible enough to meet the threshold of substantiality." *Id*. at 16-17 (citing, *e.g., Duble v. FedEx Ground Package Sys., Inc*., 572 F. App'x 889, 895 (11th Cir. 2014) (noting that an action is not adverse simply because the plaintiff dislikes it or disagrees with it)); *Sanchez v. Denver Pub. Schs*., 164 F.3d 527, 532 (10th Cir. 1998) (reassignment which increased employee's commute time from five to seven minutes to between thirty and forty minutes was not an adverse employment action); *Burnette v. Northside Hosp*., 342 F. Supp. 2d 1128, 1136-38 (N.D. Ga. 2004) (increase of commute by sixty to ninety minutes each day was not an adverse term and condition)).

Plaintiff replies that Defendants' challenge "is not a challenge to the adequacy of the pleadings, but rather a Rule 56 argument asking the Court to make a legal conclusion" regarding whether Plaintiff's transfer was adverse. Doc. 20 at 6.  Plaintiff then provides the court with legal authority to support his position that transfers *can* constitute adverse employment actions under a test of objective reasonableness.  *Id*. at 6 (citing *Johnson v. Booker T. Washington Broad. Serv., Inc*., 234 F.3d 501, 513 (11th Cir. 2000) (noting that a tangible employment action is a significant change in employment status, such as . . . reassignment with significantly different responsibilities)); *Doe v. DeKalb Cty. Sch. Dist*., 145 F.3d 1441, 1453 (11th Cir. 1998) (deciding that the plaintiff "must demonstrate that a reasonable person in his position would have found his transfer to be adverse under all the facts and circumstances.").

To allege an unlawful discrimination claim under the ADA, a plaintiff must show: (1) he is suffering from a disability; (2) he is qualified for the position in question; and (3) he has been discriminated against because of his disability.[7]  *Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1224 (11th Cir. 1997).  Here, Plaintiff alleges that he suffered a stroke, Doc. 1 at 3, ¶ 17; that he was released from his personal physician to return to work without restrictions, *id.* at 6, ¶ 32, and released from the company's physician to return to work with one restriction, *id.* at 7, ¶ 38; that despite his recovery, Defendants "regarded and perceived [Plaintiff] as being disabled, *id.* at 10, ¶ 57; that he was not allowed to return to work because of his perceived disability, *id.* at 10, ¶ 58; that he was transferred to another plant despite his ability to return to his previous position, *id.* at 7, ¶ 39; that the atmosphere towards him was "implicitly hostile" at the new plant, *id.* at 7, ¶ 41; and that he was told— after having to leave the new plant for a medical emergency—that he could not return to work, *id.* at 8, ¶ 45.  Assuming the veracity of these factual assertions, the undersigned concludes that they plausibly give rise to relief for Plaintiff for an ADA discrimination claim.  While it may ultimately be determined that Plaintiff's transfer was not adverse, such a conclusion is not foregone, and Plaintiff has—at this pleading stage—sufficient facts to withstand Defendants' motion to dismiss.  Accordingly, Defendants' motion to dismiss Plaintiff's ADA discrimination claim is due to be denied.

---

[7] It does not appear that Defendants challenge whether Plaintiff alleged that (1) he is suffering from a disability or that (2) he is qualified for the position in question.  Instead, Defendants focus their argument on whether Plaintiff has alleged facts to show that he was subjected to an adverse employment action.

### 5. *Whether Plaintiff's ADA failure-to-accommodate claim should be dismissed.*

Defendants argue that Plaintiff's ADA failure-to-accommodate claim should be dismissed for multiple reasons, including that Plaintiff has merely alleged that "he was not provided the benefit of his choice" when he was transferred to a different plant, *id.* at 19; that Plaintiff's transfer to a different plant was a reasonable accommodation because it allowed Plaintiff "to continue to work with no apparent change in the terms and conditions" of his employment, *id.* at 19-20; and that Plaintiff's transfer to a different plant does not meet the standard for an adverse employment action, *id.* at 21-22.

Plaintiff responds that he indeed pled facts establishing Defendants' failure to accommodate and establishing that he suffered adverse employment actions at the hands of Defendants.  Doc. 20 at 9-12.  Plaintiff states:

> Here, Plaintiff showed that following his stroke, Defendants made a record of him being disabled by classifying him as disabled.  (Doc. 1, ¶ 17).  Plaintiff's doctor released him to return to work in January 2015 "with certain non-essential job duty accommodations" (*Id.*, ¶ 19), but [Defendant] Argos communicated he would not be allowed to return to work unless the doctor were to "tweak his verbiage."  (*Id.*, ¶ 20).  Plaintiff also asked for, and was initially told, he could receive minimal assistance from the plant manager at a nearby plant.  (*Id.*, ¶ 21).  However, approximately three weeks later, [Defendant] Argos took a different position.  (*Id.*, ¶ 22).  Plaintiff attempted to contact [Defendant] Argos about its misrepresentations and what could be done to get him back to work, but [Defendant] Argos failed or refused to respond.  (*Id.,* ¶ 23).  Later, [Defendant] Argos told Plaintiff there was "nothing [Defendant] Argos could do" to meet his accommodations requested.  (*Id.*, ¶ 26).

To establish a prima facie claim of failure to accommodate under the ADA, the plaintiff must show that: (1) he is disabled; (2) he is a qualified individual; and (3) he was discriminated against by way of the defendant's failure to provide a reasonable accommodation.[8] *McKane v. UBS Fin. Servs.*, 363 F. App'x 679, 681 (11th Cir. 2010) (citing *Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2001)). Here, Plaintiff alleges that he suffered a stroke, Doc. 1 at 3, ¶ 17; that he was released from his physician to return to work without accommodation and released from the company physician to return to work with one accommodation, *id.* at 6, 7, ¶ 32, 38; and that he was essentially forced to transfer to another plant in order to maintain his employment, *although his responsibilities at the transfer location were similar, if not identical, to the job responsibilities he performed at the original plant*, *id.* at 7, ¶¶ 40, 41 (emphasis added). Plaintiff alleges that Defendants failed to provide a reasonable accommodation to Plaintiff and refused to allow him to perform the essential functions of his job. *Id.* at 11, ¶ 63. Assuming the veracity of these underlying facts, the undersigned concludes that they do not give rise to an ADA failure-to-accommodate claim. Although Plaintiff's transfer to the Columbus plant was arguably not in his favor, he was provided a reasonable accommodation to return to work through the transfer.[9] While he might have preferred to

---

[8] Like Defendants' argument to dismiss Plaintiff's ADA discrimination claim, Defendants do not challenge that Plaintiff has asserted the requisite facts to satisfy the first two elements of an ADA failure-to-accommodate claim.

[9] Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified

20

return to work at the Auburn plant, he is not afforded by law the accommodation of his choice. *See McKane v. UBS Fin. Serv. Inc.,* 363 F. App'x 679, 681 (11th Cir. 2010) ("An employee with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation.").  As such, Defendants' motion to dismiss this claim is due to be granted.

### 6  &  7.  Whether Plaintiff's fraudulent misrepresentation claim and fraudulent deceit claim against Defendant Pedersen should be dismissed.

Defendants argue that Plaintiff's Fraudulent Misrepresentation Claim against Defendant Pedersen should be dismissed for multiple reasons, including that Plaintiff cannot demand damages arising from alleged misrepresentations made by Defendant Pedersen to a third-party, who is non-party to this suit, *id*. at 23-24; that Plaintiff's complaint fails to "point out which particular statements contained in the body of the complaint satisfy" the elements of the fraudulent misrepresentation claim, *id*. at 24-25; that Plaintiff fails to allege with specificity that Defendant Pedersen's alleged misrepresentations to a third-party were made with the intent to induce Plaintiff to act and that Plaintiff acted to his detriment in reliance on such statements, *id*. at 25-27; that Plaintiff fails to satisfy the requirement that Defendant Pedersen made misrepresentations to him with the intent to induce him to act and that he acted to his detriment in reliance on such

---

readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).

statements, *id*. at 27-29; and that Plaintiff fails to allege how reliance on each alleged misrepresentation caused him damage, *id*. at 29.

Plaintiff counters that third-party fraud is actionable under Alabama law,[10] Doc. 20 at 14-16; that Plaintiff properly pled that he detrimentally relied on Defendant Pedersen's misrepresentations, *id*. at 16-17; and that Plaintiff sufficiently pled damages proximately caused by that reliance, *id*. at 17-18.

Defendant argues that Plaintiff's Fraudulent Deceit Claim against Defendant Pedersen should be dismissed for failure to state a claim with particularity as required by Rule 9(b).  Doc. 16 at 30-32.  Specifically, Defendants argue that Plaintiff failed to allege facts with sufficient specificity to identify which statements are the subject of the claim,

---

[10] With regards to Plaintiff's argument that third-party fraud is actionable, Plaintiff notes that "[w]hile it is generally true that a stranger to a transaction has no cause of action for misrepresentation, this rule is not without exception[.]"  Doc. 20 at 15 (citing *Chase v. Kawasaki Motors Corp., USA,* 140 F. Supp. 2d 1280 (M.D. Ala. 2001) (noting that the Alabama Supreme Court has expanded the rule that deceit must be practiced directly on the person injured to allow, under some circumstances, a person injured *indirectly* by deceit to sue the party who made the misrepresentation)). The undersigned agrees.  Under Alabama law, "it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." *Thomas v. Halstead,* 605 So.2d 1181, 1184 (Ala. 1992).

> While generally '[a] stranger to a transaction . . . has no right of action [for fraud]' there is an exception to this general rule: 'If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.'

*Id.* (quoting 37 C.J.S. Fraud § 60 at 344).  Thus, "[t]here is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation." *Colonial Bank of Ala. v. Ridley & Schweigert,* 551 So. 2d 390, 396 (Ala.1989); *see also Danley v. Murphy,* 658 So. 2d 483, 486 (Ala. Civ. App. 1994).

*id.* at 31, and that Plaintiff failed to adequately allege facts to show that Defendant Pedersen misled him or caused him damage, *id.* at 31-32.

Plaintiff replies that the claim is properly pled under Ala. Code § 6-5-104 and Rule 9(b), Doc. 20 at 18-19; that Defendant Pedersen made misrepresentations that she either did not believe or had no reasonable ground to believe, *id.* at 19; and that Defendant Pedersen was "duty-bound" to disclose certain information to Plaintiff, *id.*

Plaintiff's fraudulent misrepresentation and fraudulent deceit claims are brought pursuant to sections 6–5–101, 6–5–103, and 6–5–104 of the Code of Alabama.[11]  Doc. 1 at

---

[11] Notably, Plaintiff does not assert a claim pursuant to § 6-5-102, which makes actionable suppression of a material fact.  In count five, Plaintiff seems to suggest that he is making a fraudulent deceit claim based upon Defendant Pedersen's suppression of certain information.  *See* Doc. 1 at 14, ¶ 79 ("As set forth in the Statement of Facts herein and/or otherwise, [Defendant] Pedersen: . . . (c) suppressed or concealed facts which she was duty bound to disclose . . . .").  However, other than Plaintiff's legal conclusion that Defendant Pedersen was "duty bound to disclose" to him, Plaintiff's complaint fails to allege facts that would support that conclusion.  To adequately allege a duty to disclose, Plaintiff must allege facts upon which that duty may arise.  *See Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *9-10 (N.D. Ala. Dec. 12, 2014); *Shedd v. Wells Fargo Home Mortgage, Inc.*, Civil Action No. 14-00275-CB-M, 2014 WL 6451245, at *5 (S.D. Ala. Nov. 17, 2014).  In Alabama, a confidential or fiduciary relationship, which may trigger a duty to disclose, is defined as follows:

> A confidential relationship is one in which one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible.  It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another.

*DGB, LLC v. Hinds,* 55 So.3d 218, 231–32 (Ala. 2010) (quoting *Bank of Red Bay v. Kijng,* 482 So. 2d 274, 284 (Ala. 1985)) (internal quotation marks omitted).  Mere silence in the absence of a duty to disclose is not fraudulent.  *Hughes v. Hertz Corp*., 670 So. 2d 882, 888 (Ala. 1995) (citing, *e.g., Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288 (Ala. 1993); *Hardy v. Blue Cross & Blue Shield of Ala.*, 585

13, 14, ¶¶ 72, 78.   Section 6–5–101 provides the cause of action for fraudulent misrepresentations.   It states: "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  Ala. Code § 6–5–101 (1975).   A claim for fraudulent misrepresentation under Alabama law requires: "(1) a false representation; (2) concerning a material existing fact; (3) which is relied upon by the plaintiff; and, (4) damage to the plaintiff as a proximate result of the false representation."[12]  *Dickinson v. Moore*, 468 So. 2d 136, 137-38 (Ala. 1985) (citing *Village Toyota Co., v. Stewart*, 433 So. 2d 1150, 1153 (Ala. 1983)); *see also Kaye v. Pawnee Const. Co., Inc.,* 680 F.2d 1360, 1366 (11th Cir. 1982) (citing *Earnest v. Pritchett-Moore, Inc*., 401 So. 2d 752, 754 (Ala. 1981) ("In actions for misrepresentation of material facts under § 6-5-101 there must be a false representation, the false representation must concern a material existing fact, and the plaintiff must be damaged as a proximate result.")). "Generally, whether fraudulent misrepresentation occurred is a 'question[ ] of fact, to be answered by examining the evidence adduced at trial in the light most favorable to [the

---

So. 2d 29 (Ala. 1991)).  The undersigned concludes that Plaintiff's complaint fails to allege any facts that would trigger a duty for Defendant Pedersen to disclose information to Plaintiff.  As such, to the extent that Plaintiff is attempting to assert a fraudulent deceit claim based upon Defendant Pedersen's suppression of information from Plaintiff, Plaintiff's complaint fails to sufficiently allege such a claim, and it is due to be dismissed.

[12] In addition, the Alabama Supreme Court has held that "in order to recover for fraud, the plaintiff must show that his reliance upon the misrepresentation was reasonable under the circumstances."  *Dickinson*, 468 So. 2d at 138 (citing *Mahoney v. Forsman*, 437 So. 2d 1030, 1033 (Ala. 1983)).  While an intent to deceive is not essential for a fraudulent misrepresentation claim, an intent that the fact be relied on as an inducement to act or not to act is essential.  *Kaye*, 680 F.2d at 1366 (citing *Hall Motor Co. v. Furman*, 234 So. 2d 37, 40 (Ala. 1970)).

nonmovant].'" *Wheelan v. Sessions*, 50 F. Supp. 2d 1168, 1172 (M.D. Ala. 1999) (quoting

*Marriott Corp. v. Dasta Constr. Co.,* 26 F.3d 1057, 1065 (11th Cir. 1994)).

Sections 6–5–103 and 6–5–104 address actions for deceit.  Pursuant to § 6–5–103,

[w]illful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

Furthermore, § 6–5–104 provides as follows:

(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.
(b) A deceit within the meaning of this section is either:
  (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
  (2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
  (3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or
  (4) A promise made without any intention of performing it.

Thus, to sufficiently plead fraudulent deceit, Plaintiff must allege facts to show that he was

injured by a willful or reckless misrepresentation of material fact by Defendant Pedersen,

and that, in making the misrepresentation of a material fact, Defendant Pedersen intended

to deceive Plaintiff.  *See Hughes v. Hertz Corp.*, 670 So.2d 882, 888 (Ala. 1995) ("Deceit,"

under §§ 6-5-103 and -104 results from either a willful or a reckless misrepresentation or

25

a suppression of material facts with an intent to mislead.).  While a claim for fraudulent

deceit is extremely similar to a fraudulent misrepresentation claim,

> 'a[n] action for deceit, under . . . § 6–5–103 and § 6–5–104, results from
> either a willful or reckless misrepresentation or a suppression of material
> facts with an intent to mislead,' *Whitlow v. Bruno's Inc.,* 567 So. 2d 1235,
> 1241 (Ala. 1990), while an action for misrepresentation of material fact can
> be based on an unintentional misrepresentation. [§ 6–5–101].

*Montgomery Rubber & Gasket Co. v. Belmont Machinery Co.,* 308 F. Supp. 2d 1293, 1299

(M.D. Ala. 2004).

The following factual allegations in the complaint are pertinent to Plaintiff's

fraudulent misrepresentation and fraudulent deceit claims:

> 35.     In his letter [to Defendant Argos concerning Plaintiff's ability
> to return to work], Dr. Stauffer . . .  noted that the only duty to which
> [Plaintiff] would require an accommodation was "in collecting certain
> samples for quality testing."  Stauffer noted that drivers at the Auburn Plant
> could assist [Plaintiff] in collecting the samples.

> 36.     That same day, [Defendant] Pedersen telephoned Dr.
> Stauffer's office and misrepresented herself as a "claims adjuster."
> [Defendant] Pedersen misrepresented the size of the Auburn plant workforce;
> specifically, [Defendant] Pedersen misrepresented that the Auburn Plant was
> a "one-man" plant.  [Defendant] Pedersen further misrepresented the nature
> of [Plaintiff's] job responsibilities and duties, as well as the accommodations
> necessary for his continued employment.

> 37.     In reliance on [Defendant] Pedersen's misrepresentations, Dr.
> Stauffer amended his report to state that a neuropsychologic evaluation and
> functional focused ability testing were necessary before he could form a final
> opinion.  However, no such testing was ever ordered by [Defendant] Argos,
> nor did [Defendant] Argos advise [Plaintiff] for the need of any such testing.

> 38.     [Defendant] Pedersen, while withholding Dr. Stauffer's
> request for the additional testing, informed [Plaintiff] that [Defendant] Argos
> simply could not meet the accommodations necessary for him to work in the

Auburn plant.   [Defendant] Pedersen's misrepresentations were made to [Plaintiff] despite the fact that [Plaintiff] had been fully released . . . with one accommodation. . . .

39.    [Defendant] Pedersen then informed [Plaintiff] that his only option was to transfer to [Defendant] Argos'[s] plant located in Columbus, Georgia . . . and that if [Plaintiff] refused, he would be terminated.

40.    Having no other meaningful choice, [Plaintiff] reported for work at the Columbus Plant. . . .

Doc. 1 at 6-7.  In reviewing the aforementioned factual allegations, it appears that Plaintiff is pursuing two potential factual scenarios as the basis of his fraud claims.  The first route involves misrepresentations made by Defendant Pedersen to Dr. Stauffer.  *Id*. at 6, ¶¶ 36, 37.  The second involves misrepresentations made by Defendant Pedersen to Plaintiff.  *Id*. at 6-7, ¶¶ 38, 39.  The undersigned will evaluate both scenarios to determine if Plaintiff has sufficiently pled a fraudulent misrepresentation claim or a fraudulent deceit claim under Alabama law.

*Misrepresentations made to Dr. Stauffer*

With regards to Defendant Pedersen's misrepresentations made to Dr. Stauffer, Plaintiff states that *Dr. Stauffer relied* on those misrepresentations—*not Plaintiff.  See* Doc. 1 at 6, ¶ 37 ("In reliance on [Defendant] Pedersen's misrepresentations, Dr. Stauffer amended his report. . . .").  Thus, Plaintiff fails to allege facts—based upon this scenario— which would give rise to a plausible fraudulent misrepresentation claim.  *See Dickinson*, 468 So. 2d at 137-38 (requiring that the plaintiff rely on the false representation in order to state a claim for fraudulent misrepresentation).  To the extent that Plaintiff attempts to

27

assert reliance in that Plaintiff lost an opportunity "to contest [Defendant] Argos'[s] findings and/or attempt to return to his job at the Auburn Plant" because of Defendant Pedersen's misrepresentations to Dr. Stauffer, such reliance is more than a stretch, and is not factually supported in Plaintiff's complaint.[13]  *See* Doc. 20 at 16.  Nonetheless, even if the undersigned were to assume *arguendo* reliance on the part of Plaintiff, Plaintiff has not sufficiently pled proximate harm as a result of the misrepresentation to Dr. Stauffer.  Here, any harm to Plaintiff is at least one step removed from Defendant Pedersen's misrepresentations to Dr. Stauffer.  The alleged harm to Plaintiff, if any, occurred *not* because Dr. Stauffer amended his report, but because Plaintiff was not informed by Defendant Argos that the amended report required additional testing for Plaintiff.  Thus, for these reasons, Plaintiff has not alleged facts requisite to establish a fraudulent misrepresentation claim based upon Defendant Pedersen's misrepresentations to Dr. Stauffer.

To the extent that Plaintiff bases his fraudulent deceit claim upon the misrepresentations to Dr. Stauffer, the claim fails.  In addition to Plaintiff's failure to

---

[13] Plaintiff's complaint suggests that Dr. Stauffer relied on Defendant Pedersen's misrepresentations and amended his report to require additional testing.  Doc. 1 at 6, ¶ 37.  Plaintiff's complaint then states that no testing was ordered by Defendant Argos, and that Defendant Argos did not advise Plaintiff of the need for additional testing.  *Id*.  Nowhere does Plaintiff's complaint allege that Plaintiff lost an opportunity to argue that he should be restored to his old position because of his lack of knowledge regarding the need for additional testing.  Instead, such assertion is ferreted out in Plaintiff's opposition to Defendants' motion to dismiss.  However, as a Rule 12(b)(6) motion tests the sufficiency of the pleadings, the undersigned considers only Plaintiff's complaint and the facts asserted therein to determine if Plaintiff has stated a fraudulent misrepresentation claim.

sufficiently plead facts showing reliance and/or proximate harm discussed above, Plaintiff has failed to sufficiently plead scienter on behalf of Defendant Pedersen. Indeed, Plaintiff has not alleged facts showing that Defendant Pedersen intended to deceive *Plaintiff* and induce *Plaintiff* to act to his detriment through Defendant Pedersen's conversation with Dr. Stauffer. Instead, Plaintiff has merely pled that Defendant Pedersen telephoned Dr. Stauffer's office and misrepresented certain facts involving the Auburn plant and Plaintiff's responsibilities there; that Dr. Stauffer relied upon the misrepresentation and amended his report; and that Defendant Argos did not tell Plaintiff that the report had been amended.[14] Thus, Plaintiff has not alleged the facts requisite to establish a fraudulent deceit claim based upon Defendant Pedersen's misrepresentations to Dr. Stauffer.

*Misrepresentations made to Plaintiff*

With regards to the statements that Defendant Pedersen made to Plaintiff regarding Defendant Argos's inability to meet the accommodations necessary for Plaintiff to work in the Auburn plant and Plaintiff's pending termination if he did not agree to a transfer, Plaintiff has sufficiently alleged a fraudulent misrepresentation claim. Specifically, Plaintiff pled that Defendant Pedersen misrepresented to Plaintiff that Defendant Argos could not meet his accommodations to return to work at the Auburn plant and that his only

---

[14] If Defendant Pedersen intended to influence Plaintiff into acting to his detriment through her misrepresentation to Dr. Stauffer, Defendant Pedersen would have had to make the misrepresentation to Dr. Stauffer with the expectation that her statements would cause Dr. Stauffer to amend his report, that such amendment would reflect negatively for Plaintiff, that Defendant Argos would not communicate the need for additional testing to Plaintiff, that Plaintiff would not discover the report's amendment on his own, and that Plaintiff would then detrimentally rely upon his lack of knowledge that the report had been amended. Such a scenario is implausible, and such intent to deceive is not sufficiently pled.

option was to transfer to the Columbus plant. *Id*. at 7, ¶¶ 39, 40.  Plaintiff alleged that Defendant Pedersen made the misrepresentations with the knowledge that those statements were false since Plaintiff had actually been released by two physicians—one with accommodation—to return to work at the Auburn plant.  *Id*. at 6-7, 13, ¶¶ 38, 74.  Plaintiff pled reliance by stating that he had "no other meaningful choice" but to transfer to the Columbus plant, and that he reported for work there.  *Id*. at 7, ¶¶ 39, 40.  Further, Plaintiff alleged that he was damaged as a result of those misrepresentations, as he was forced to transfer and was ultimately "replaced at the Auburn plant by someone in his thirties."  Doc. 1 at 9, ¶ 51.  Construing these facts in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff has alleged facts necessary to establish a fraudulent misrepresentation claim based upon Defendant Pedersen's misrepresentations to Plaintiff.

To the extent such misrepresentations to Plaintiff could form a fraudulent deceit claim, Plaintiff has failed to allege facts to support the scienter aspect of such a claim. Plaintiff has not alleged that Defendant Pedersen intended to deceive Plaintiff to act to his detriment because of her misrepresentations.[15]  Because Plaintiff's complaint, even when read *in toto*, fails to allege facts supporting the requisite scienter for a fraudulent deceit claim, Plaintiff has failed to state such a claim based upon Defendant Pedersen's misrepresentations to Plaintiff.

---

[15] While Plaintiff's complaint provides that the misrepresentations were made "despite the fact that [Plaintiff] had been fully released by Dr. Bufford" and released with one accommodation by Dr. Stauffer, missing are the facts suggesting that Defendant Pedersen's misrepresentations were made with the intention of misleading Plaintiff.

*Rule 9(b) Heightened Pleading Standard*

Having determined that Plaintiff has successfully stated a claim for fraudulent misrepresentation based upon Defendant Pedersen's representations to Plaintiff, the undersigned proceeds to examine whether Plaintiff has alleged such a claim with the specificity required to satisfy Rule 9(b).

Rule 9(b) is satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, . . .
(2) the time and place of each such statement and the person responsible for making . . . same, . . .
(3) the content of such statements and the manner in which they misled the plaintiff, and
(4) what the defendants "obtained as a consequence of the fraud."

*Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citing *Fitch v. Radnor Indus., Ltd.,* No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990) (quoting *O'Brien v. Nat. Prop. Analysts Partners*, 719 F. Supp. 222, 225 (S.D.N.Y. 1989))).   However, the application of this rule "must not abrogate the concept of notice pleading." *Id.* (citation and internal quotation marks omitted).   Furthermore, "[t]here is no 'one size fits all' checklist for satisfying [the Rule 9 pleading] requirement."  *Claybar v. Huffman,* 54 F. Supp. 3d 1284, 1288 (S.D. Ala. 2014) (citing *Tello v. Dean Witter Reynolds, Inc.,* 494 F.3d 956, 972–73 (11th Cir. 2007) ("While allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, we have acknowledged that alternative means are also available to satisfy the rule in substantiating fraud allegations.")); *Mechler v. John Hancock Life Ins.*

31

*Co., et al.,* Civil Action No. 07-0724-CB-M, 2008 WL 4493230, at *3  (S.D. Ala. Sept. 30, 2008) ("Plaintiffs' fraud/fraudulent suppression claim could be better pled; however, the complaint, taken as a whole, sufficiently alerts the defendant to the misconduct with which it is charged.")).

The undersigned concludes that Plaintiff's complaint meets the specificity requirements of Rule 9(b) for a fraudulent misrepresentation claim based upon Defendant Pedersen's misrepresentations to Plaintiff.  Plaintiff has alleged what statements were made by Defendant Pedersen and when they were made, with enough specificity and particularity, to place Defendant Pedersen on notice as to the basis of the fraudulent misrepresentation claim asserted against her.  Plaintiff's complaint further identifies the manner in which Defendant Pedersen's statements misled him—*i.e.*, he believed he had no choice but to report to work at the Columbus plant because Defendant Argos would not meet his accommodation at the Auburn plant.  Finally, while Plaintiff's complaint is lacking in what Defendant Pedersen "obtained as a consequence of the fraud," Plaintiff does allege that he was replaced by a younger individual at the Auburn plant.  *See* Doc. 1 at 9, ¶ 51.  Thus, reading the complaint in its entirety, the undersigned concludes that Plaintiff's fraudulent misrepresentation claim satisfies the requirements of Rule 9(b).

In summary, Plaintiff's complaint states a plausible claim for fraudulent misrepresentation based upon Defendant Pedersen's misrepresentations to Plaintiff, and such claim is pled sufficiently under Rule 9(b).  Plaintiff's complaint does not state a plausible claim for fraudulent deceit.  As such, Defendants' motion to dismiss Plaintiff's

fraudulent misrepresentation claim is due to be denied.  Defendants' motion to dismiss Plaintiff's fraudulent deceit claim is due to be granted.  To the extent Plaintiff is asserting a fraudulent deceit claim under Alabama law for Defendant Pedersen's suppression of material facts, Plaintiff has not pled facts to show that Defendant Pedersen was under a duty to disclose to Plaintiff, and as such, the claim should be dismissed.

### III.   Conclusion

For the foregoing reasons, the undersigned RECOMMENDS that Defendants' Motion to Strike (Doc. 15) be DENIED.  It is further

ORDERED that Defendants' Motion to Dismiss (Doc. 16) be GRANTED in part and DENIED in part in accordance with this recommendation.  Specifically, the undersigned

RECOMMENDS that Defendant Pedersen be DISMISSED from Plaintiff's ADA claim (count one) and from Plaintiff's FMLA claim (count three).  The undersigned also

RECOMMENDS that Plaintiff's ADA failure to accommodate claim (count two) and Plaintiff's fraudulent deceit claim (count five) be DISMISSED.  Further, the undersigned

RECOMMENDS that this matter be referred back for further proceedings.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 15, 2016**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by

the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 1st day of November, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE